UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT H., | ) |
| | ) |
|       **Plaintiff** | ) |
| | ) |
| v. | )   No. 1:23-cv-00465-LEW |
| | ) |
| MICHELLE KING, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       **Defendant** | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Supplemental Security Income appeal seeks remand on the basis that the Administrative Law Judge (ALJ) erred in rejecting the opinion of his treating physician that he required an assistive walking device. *See* Plaintiff's Brief (ECF No. 10) at 11-15. I discern no error and recommend that the Court affirm the Commissioner's decision.

**I. Background**

The Plaintiff applied for benefits in February 2021. *See* Record at 31. After his claim was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* That hearing took place in January 2023, *see id.* at 54-88, following which the ALJ issued a decision finding that the Plaintiff suffered from the severe impairments of bilateral hip arthritis, depression, anxiety, personality disorder, post-traumatic stress disorder (PTSD), and polysubstance abuse (alcohol), *see id.* at 34. Considering those impairments, the ALJ found that the

1

Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) except that he could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; could occasionally climb ladders, ropes or scaffolds; could perform simple tasks in a normal work schedule; could not work with the public but could interact appropriately with coworkers and supervisors in a normal work setting; and could adapt to normal changes in a routine of non-public simple tasks. *See id.* at 37. The ALJ found that the Plaintiff was unable to perform any past relevant work with such an RFC but could perform other jobs existing in significant numbers in the national economy and was therefore not disabled. *See id.* at 47-49. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 15-17, making that decision the Commissioner's final determination, *see* 20 C.F.R. § 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The Plaintiff argues that the ALJ erred in failing to find that he required an assistive walker based on the opinion of his treating physician Benjamin Mailloux, M.D. *See* Plaintiff's Brief at 11. He contends that the ALJ's reliance on the opinion of agency nonexamining consultant Edward Ringel, M.D.—who did not opine that the Plaintiff required a walker—was erroneous because Dr. Ringel did not see the later submitted evidence from Dr. Mailloux and from the Plaintiff's orthopedic surgeon Owen Nelson, M.D. *See id.* at 12-14. He asserts that these errors were prejudicial because the vocational expert testified that no work would be available to someone who required a walker to stand and walk. *See id.* at 14 (citing Record at 86).

In his decision, the ALJ noted as follows:

> On December 16, 2022, Dr. Mailloux[] prescribed the [Plaintiff] a walker after [he] reported he fell 12 times since he had to cancel his hip surgery [with Dr. Nelson in August 2022]. Most specifically, [Dr. Mailloux] stated "Given his several falls in the last few months, I am going to prescribe him a front wheeled walker for stability while walking. Assuming he is able to proceed with his hip replacement surgery, he will likely need the walker for post-care anyway for many months." . . .
>
> . . .
>
> . . . It appears [Dr. Mailloux] prescribed the [Plaintiff] a walker on December 16, 2022, . . . based on the [Plaintiff's] self-report that he had fallen approximately 12 times since August 2022. However, the evidence did not substantiate the [Plaintiff's] self-report of falling at all, as the [Plaintiff] did not report any incident in falling to a treating provider, until he reported to Dr. Maill[ou]x that he had fallen 12 times. Again, on November 18, 2022, the [Plaintiff] completed a Fall Risk Assessment, and he was asked if he had difficulty with walking and [he]

3

> reported no; [he] reported he is able to stand from a seated position unaided by seat arms or [a] walking device; he stated he is able to walk 10 feet, turn around, and walk 10 feet back to the chair unassisted by any walking device. Therefore, [I am] not persuaded by [Dr. Mailloux's] testimony that a walker is medically necessary during the period under review.

Record at 40, 46 (citations omitted).

The ALJ also acknowledged that Dr. Nelson recommended that the Plaintiff undergo bilateral hip replacement in May 2022, but noted that the Plaintiff canceled a surgery scheduled in August 2022 because "he was too sick." *Id.* at 40. The ALJ considered a January 2023 letter from Dr. Nelson discussing the Plaintiff's need for surgery and potential recovery periods, but was "not persuaded" by the letter because "Dr. Nelson [did] not state" what the Plaintiff's limitations were at that time or what they would be during and after recovery. *Id.* at 46.

Ultimately, the ALJ relied on Dr. Ringel's June 2021 opinion that the Plaintiff was capable of light work. *See id.* at 43.

The Plaintiff argues that the ALJ rejected Dr. Mailloux's opinion that the Plaintiff required a walker because "the ALJ did not believe [his] reports of falling." Plaintiff's Brief at 13. He asserts that the ALJ engaged in "impermissible speculation" by concluding that the Plaintiff did not fall because he did not report falling to other providers. *Id.* He also points to his own testimony that he was confused about the definition of a fall. *See id.* (quoting Record at 66-67).

These points are unavailing. An ALJ's role is to resolve conflicts in the evidence, and that is just what the ALJ did here by giving greater weight to the Plaintiff's November 2022 statement that he had no trouble with walking or

4

balancing than to Dr. Mailloux's December 2022 prescription of a walker based on the Plaintiff's inconsistent report of recently falling twelve times.[1] *See* Record at 77, 562-66, 586; *Figueroa v. Comm'r of Soc. Sec.*, No. 19-1069 (BJM), 2020 WL 13481006, at *7 (D.P.R. Sept. 30, 2020) ("[T]he ALJ was faced with conflicting evidence regarding [the claimant's] use of a[n assistive device], and she permissibly resolved that conflict."). That the Plaintiff wishes the ALJ resolved the conflicting evidence more favorably and can point to evidence that might have supported a different conclusion does not entitle him to remand. *See Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *5 (D. Me. Dec. 17, 2020) (rec. dec.) ("That the record could arguably support a different conclusion does not entitle the plaintiff to remand; it is for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein."), *aff'd*, 2021 WL 66609 (D. Me. Jan. 7, 2021).

The Plaintiff's attempts to use Dr. Nelson's records and letter about the Plaintiff's need for bilateral hip replacement surgery to bolster Dr. Mailloux's prescription of a walker are equally unpersuasive. Dr. Nelson did not indicate that the Plaintiff would require a walker or, as the ALJ noted, offer any cogent opinion about the Plaintiff's functional abilities before or after the contemplated surgeries.[2]

---

[1] I am not persuaded by the Plaintiff's argument that the ALJ could not reject Dr. Mailloux's opinion that he required a walker because it was "uncontroverted." Plaintiff's Brief at 13-14; *see Brigham v. Colvin*, No. 1:15-cv-00433-JHR, 2016 WL 4994990, at *4-5 (D. Me. Sept. 19, 2016) (rejecting the argument that a medical opinion was uncontroverted where the ALJ supportably found that the opinion was inconsistent with medical records).

[2] There is a passing reference to the Plaintiff's plan "to borrow a walker" in the notes from his preoperative visit for the August 2022 surgery that he ultimately canceled, *see* Record at 527, but the Plaintiff does not make anything of this reference and, in any event, even if he would have needed a walker during surgery recovery, that fact is irrelevant because he did not undergo surgery during the period under review.

*See* Record at 46, 533-34, 594; 20 C.F.R. § 416.945(a)(1) (defining residual functional capacity as "the most [a claimant] can still do despite [his] limitations"). Moreover, as the Commissioner points out, *see* Commissioner's Brief (ECF No. 14) at 7, Dr. Ringel appears to have reviewed the same imaging upon which Dr. Nelson based his surgery recommendation, *see* Record at 92, 343, 504, 594, which undermines the Plaintiff's suggestion that the later submitted evidence showed a material worsening of his bilateral hip arthritis, *see* Plaintiff's Brief at 12.

For all these reasons, I am not persuaded that the ALJ erred in evaluating the evidence from Dr. Mailloux and Dr. Nelson or that the evidence from those providers undermined the ALJ's reliance on the opinion of Dr. Ringel as to the Plaintiff's ability to perform light work.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be ***AFFIRMED***.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: January 31, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge